POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Movants Samuel Catt*
*and Nutan Desai and Proposed Lead*
*Counsel for the Class*

*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL STRADFORD, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHIPOTLE MEXICAN GRILL, INC., BRIAN NICCOL, and JOHN R. HARTUNG,<br><br>Defendants. | Case No. 8:24-cv-02459-SPG-JDE<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF SAMUEL CATT AND NUTAN DESAI FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL**<br><br>DATE:  February 12, 2025<br>TIME:  1:30 p.m.<br>JUDGE:  Sherilyn Peace Garnett<br>CTRM:  5C |

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ......................................................................................1

II.   STATEMENT OF FACTS ...........................................................................................2

III.  ARGUMENT................................................................................................................4

    A.    CATT AND DESAI SHOULD BE APPOINTED CO-LEAD
         PLAINTIFFS ..............................................................................................................4

        1.    Catt and Desai Are Willing to Serve as Class Representatives ...............5

        2.    Catt and Desai Have the "Largest Financial Interest" .............................6

        3.    Catt and Desai Otherwise Satisfy the Requirements of Rule 23..............7

        4.    Catt and Desai Will Fairly and Adequately Represent the
            Interests of the Class and Are Not Subject to Unique Defenses ............10

    B.    CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD
         BE APPROVED ........................................................................................................10

IV.   CONCLUSION...........................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hessefort v. Super Micro Comput., Inc.*,
　317 F. Supp. 3d 1056 (N.D. Cal. 2018) ........................................................................... 7

*In re Solar City Corp. Sec. Litig.*,
　No. 16-CV-04686-LHK, 2017 WL 363274 (N.D. Cal. Jan. 25, 2017) ............................ 7

*Janbay v. Canadian Solar, Inc.*,
　272 F.R.D. 113 (S.D.N.Y. 2010) ................................................................................... 8

*Knox v. Yingli Green Energy Holding Co.*,
　136 F. Supp. 3d 1159 (C.D. Cal. 2015) .......................................................................... 6

*Lax v. First Merchants Acceptance Corp.*,
　Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) .............. 6

*Osher v. Guess?, Inc.*, No. CV01-00871LGB(RNBX), 2001 WL 861694, (C.D. Cal. Apr. 26, 2001) 10

*Perrin v. Sw. Water Co.*,
　No. 208CV7844FMCAGRX, 2009 WL 10654690 (C.D. Cal. Feb. 13, 2009) ................. 9

*Richardson v. TVIA, Inc.*,
　No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ........................... 7

*Robb v. Fitbit Inc.*,
　No. 16-CV-00151-SI, 2016 WL 2654351 (N.D. Cal. May 10, 2016) ............................. 9

*Staton v. Boeing Co.*,
　327 F.3d 938 (9th Cir. 2003) ......................................................................................... 8

**Statutes**

15 U.S.C. § 78u-4 ................................................................................ 1, 8, 9, 10

Private Securities Litigation Reform Act of 1995 ............................................................. *passim*

**Rules**

Fed. R. Civ. P. 23 ................................................................................. 1, 2, 7, 8

Movants Samuel Catt ("Catt") and Nutan Desai ("Desai") respectfully submit this Memorandum of Points and Authorities in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing Catt and Desai as Co-Lead Plaintiffs on behalf of a class (the "Class") consisting of persons or entities who purchased or otherwise acquired publicly traded Chipotle Mexican Grill, Inc. ("Chipotle" or the "Company") common stock between February 8, 2024 and October 29, 2024, inclusive (the "Class Period") and those who purchased Chipotle call options or sold put options during the Class Period; and (2) approving proposed Co-Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## I.    PRELIMINARY STATEMENT

The complaint ("Complaint") (ECF No. 1) in the above-captioned action (the "Action") alleges that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act.  Chipotle investors, including Catt and Desai, incurred significant losses following the disclosures of the alleged fraud, which caused Chipotle's stock price to fall sharply, damaging Catt, Desai, and other Chipotle investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  During the Class Period, Catt and Desai collectively purchased 13,100 shares of Chipotle common stock, expended $819,214 on these purchases, retained 3,400 of their shares of Chipotle common stock, and as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $14,829.  *See* Declaration of Jennifer Pafiti in Support of Motion ("Pafiti Decl."), Exhibit ("Ex.") A at *2.  Accordingly, Catt and Desai believe that they have the largest financial interest in the relief sought in this Action.  Beyond their considerable financial interest, Catt and Desai

also meet the applicable requirements of Rule 23 because their claims are typical of those of absent Class members and because they will fairly and adequately represent the interests of the Class.

To fulfill their obligations as Co-Lead Plaintiffs and vigorously prosecute the Action on behalf of the Class, Catt and Desai have selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Catt and Desai respectfully request that the Court enter an order appointing them as Co-Lead Plaintiffs for the Class and approving their selection of Pomerantz as Lead Counsel for the Class.

## II.    STATEMENT OF FACTS

As alleged in the Complaint in the Action, Chipotle "owns and operates Chipotle Mexican Grill restaurants, which feature a relevant menu of burritos, burrito bowls (a burrito without the tortilla), quesadillas, tacos, and salads." ECF No. 1 at 2 ¶ 7.

Throughout the Class Period, Defendants made materially false and/or misleading statements because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them: (1) Chipotle's portion sizes were inconsistent and left many customers dissatisfied with the Company's offerings; (2) in order to address the issue and retain customer loyalty, the Company would have to ensure more generous portion sizes, which would increase cost of sales; and (3) as a result, Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times. *Id.* at 9 ¶ 37.

On July 24, 2024, after market hours, Chipotle conducted its second quarter ("Q2") 2024 earnings call (the "Q2 Call"). *Id.* ¶ 38. On the Q2 Call, Defendant Brian Niccol

("Niccol") acknowledged that portion inconsistency was an issue at Chipotle, and that it had caused customers to feel justifiably unhappy with the Company. *Id.*

Niccol further revealed that the Company would have higher cost of sales in the third quarter ("Q3") of 2024, partially as a result of giving customers more generous portions. *Id.* at 10 ¶ 39.

On this news, the price of Chipotle stock fell $0.96 per share, or 1.85%, to close at $50.82 on July 25, 2024. *Id.* at 11 ¶ 40. It fell a further $0.99 per share, or 1.9%, to close at $49.83 on July 26, 2024. *Id.*

On October 29, 2024, after market hours, the Company held its Q3 2024 earnings call. *Id.* ¶ 41. In this earnings call, interim Chief Executive Offer Scott Boatwright stated the following:

> Cost of sales in the quarter were 30.6%, an increase of about 90 basis points from last year. The benefit of last year's menu price increase was more than offset by inflation across several items, most notably avocados and dairy, as well as higher usage as we focused on ensuring consistent and generous portions, and the mixed impact from our premium Smoked Brisket LTO.

*Id.*

On October 30, 2024, during market hours, *Business Insider* published an article entitled "Chipotle says ensuring 'consistent and generous portions' has taken a toll on its profitability." *Id.* ¶ 42. It stated the following:

> It has been a big year for the humble scoop – at Chipotle, at least.
>
> ***Profit margins for the chain suffered last quarter because of a concerted effort to provide "consistent and generous portions" in every order, the company said Tuesday.***
>
> The issue was first highlighted when dissatisfied customers – protesting against what they saw as skimpy or inconsistent serving sizes at the restaurant chain – used social media this summer to complain about their scoops of protein and to try to maximize their meals.

Investors noticed, with one analyst going so far as to order 75 chicken and rice bowls from eight New York City Chipotle locations and finding that the total weight of each varied considerably.

***All the scrutiny has prompted the burrito and bowl chain to embark on an initiative to ensure everyone gets a consistent meal every visit.***

(Emphases added.)  *Id.* at 11-12.

The article further stated that while ensuring the right portion might be "good news for Chipotle diners, ***the chain said it was partly the reason for a hit to profitability in the last fiscal quarter***."  (Emphasis added.)  *Id.* at 12 ¶ 43.

On this news, the price of Chipotle stock fell $4.76 per share, or 7.86%, to close at $55.73 on October 30, 2024.  *Id.* ¶ 44.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Catt, Desai, and other Class members have suffered significant losses and damages.  *See id.* ¶ 45.

## III.    ARGUMENT

### A.    CATT AND DESAI SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

Catt and Desai should be appointed Co-Lead Plaintiffs because they have timely filed a motion for appointment as Co-Lead Plaintiffs, have the largest financial interest in this litigation to their knowledge, and otherwise strongly satisfy the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  In addition, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to

do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Catt and Desai satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Co-Lead Plaintiffs for the Class.

### 1. Catt and Desai Are Willing to Serve as Class Representatives

On November 11, 2024, counsel for plaintiff in the Action caused the statutorily required Notice to be published via *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action lawsuit had been filed on behalf of Chipotle investors, and advising investors in Chipotle securities that they had until January 10, 2025—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Pafiti Decl., Ex. B at *2.

Catt and Desai have filed the instant motion pursuant to the Notice, and they have attached sworn Certifications attesting that they are willing to serve as representatives for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C at *2-3, *5-6. Accordingly, Catt and Desai satisfy the first requirement to serve as Co-Lead Plaintiffs of the Class.

### 2. Catt and Desai Have the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of their knowledge, Catt and Desai have the largest financial interest of any Chipotle investor or investor group seeking to serve as Lead Plaintiff. For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide, these so-called *Lax* factors have been adopted by courts in the Ninth Circuit, including in this District. *See, e.g.*, *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) ("District courts have typically considered the [*Lax*] factors to determine who has the largest financial interest[.]" (internal quotation marks and citations omitted)). Of the *Lax* factors, courts in the Ninth Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See id.*

During the Class Period, Catt and Desai collectively: (1) purchased 13,100 shares of Chipotle common stock; (2) expended $819,214 on these purchases; (3) retained 3,400 of their shares of Chipotle common stock; and (4) as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $14,829. *See* Pafiti Decl., Ex. A at *2. To the extent that Catt and Desai possess the largest financial interest in the outcome of this litigation, they are the presumptive "most adequate" plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3.      Catt and Desai Otherwise Satisfy the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, lead plaintiffs must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In determining whether lead plaintiff movants satisfy Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead, a *prima facie* showing that movants satisfy Rule 23's requirements is sufficient. *See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-01 (N.D. Cal. 2018).  Moreover, a lead plaintiff movant "only needs to satisfy [Rule 23's] typicality and adequacy" requirements. *In re Solar City Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 WL 363274, at *5 (N.D. Cal. Jan. 25, 2017).  Further, the Complaint in the Action sufficiently pleads Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Catt and Desai. *See* ECF No. 1 at 13-14 ¶¶ 47, 50.

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "[T]he claims of the class representative need not be identical [to] those of all members of

the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

Catt and Desai's claims are typical of those of the Class. Catt and Desai allege, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Chipotle, or by omitting to state material facts necessary to make the statements they did make not misleading. Catt and Desai, like other Class members, purchased or otherwise acquired publicly traded Chipotle common stock during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosures of those misrepresentations and/or omissions that drove Chipotle's stock price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

In determining whether the adequacy of representation requirement of Rule 23(a)(4) is met, courts in the Ninth Circuit consider whether "the representative plaintiffs and their counsel have any conflicts of interest with other class members" and ask "will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted).

Catt and Desai are adequate representatives for the Class. There is no evidence of antagonism or conflict between Catt and Desai's interests and those of the Class, Catt and Desai have each submitted a sworn Certification declaring their respective commitment to protect the interests of the Class (*see* Pafiti Decl., Ex. C at *2-3, *5-6), and Catt and Desai's significant financial interest demonstrates that they have a sufficient interest in the

outcome of this litigation to ensure vigorous advocacy on behalf of the Class. Moreover, as set forth in greater detail below, in Pomerantz, Catt and Desai have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submit their choice of Pomerantz to the Court for approval as Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). In addition to Pomerantz, Catt and Desai are also represented by the Portnoy Law Firm in this Action.

Further, Catt and Desai constitute an appropriate movant duo of the type routinely appointed to serve as Co-Lead Plaintiffs. *See, e.g.*, *Perrin v. Sw. Water Co.*, No. 208CV7844FMCAGRX, 2009 WL 10654690, at *3 (C.D. Cal. Feb. 13, 2009) ("[C]ourts have generally held that small and manageable groups serving as lead plaintiffs do not frustrate Congress' desire to ensure that investors, rather than lawyers, control securities litigation."); *Robb v. Fitbit Inc.*, No. 16-CV-00151-SI, 2016 WL 2654351, at *7 (N.D. Cal. May 10, 2016) (appointing five-person investor group as lead plaintiff).

Catt and Desai have further demonstrated their adequacy because they are a small and cohesive movant duo who have submitted a Joint Declaration attesting to, *inter alia*, their respective backgrounds and investing experience, their understanding of the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, their decision to seek appointment jointly as Co-Lead Plaintiffs, and the steps that each of them are prepared to take to cooperatively prosecute this litigation on behalf of the Class. *See* Pafiti Decl., Ex. D at 1-4 ¶¶ 1-7, 9-13. Courts routinely appoint more than one investor as co-lead plaintiffs under such circumstances. *See, e.g.*, *Perrin*, 2009 WL 10654690, at *3-4 (appointing as lead plaintiff a group of four investors that "submitted a Joint Declaration agreeing to 'work together to ensure the maximum recovery on behalf of the proposed class'"); *Robb*, 2016 WL 2654351, at *4, *7 (appointing as lead plaintiff a group of five investors that submitted a joint declaration "stat[ing] that the individual members have discussed the responsibilities of acting as lead plaintiff, will stay in regular communication with counsel and with each other, and will make decisions by consensus").

### 4. Catt and Desai Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses

The presumption favoring Catt and Desai's appointment as Co-Lead Plaintiffs may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)   will not fairly and adequately protect the interest of the class; or

(bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Catt and Desai's ability and desire to fairly and adequately represent the Class has been discussed above.  Catt and Desai are not aware of any unique defenses Defendants could raise that would render them inadequate to represent the Class.  Accordingly, Catt and Desai should be appointed Co-Lead Plaintiffs for the Class.

### B.   CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in lead plaintiffs to select and retain lead counsel, subject to the approval of the Court.  *See id.* § 78u-4(a)(3)(B)(v).  The Court should interfere with a lead plaintiff's selection only when necessary to "protect the interests of the class."  *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Osher v. Guess?, Inc.*, No. CV01-00871LGB(RNBX), 2001 WL 861694, at \*4 (C.D. Cal. Apr. 26, 2001) ("A court may reject the lead plaintiff's choice only if it is necessary to protect the interests of the class.").

Here, Catt and Desai have selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith.  *See* Pafiti Decl., Ex. E at 1-11.  In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel.  *See id.*  For more than 85 years, Pomerantz has

represented defrauded investors. *See id.* at 1. As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth-largest class action settlement ever achieved in the United States. *See id.* at 2. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* at 1-11. More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.* at 2-3.

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Action, Catt and Desai's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute the Action effectively and expeditiously. Thus, the Court may be assured that by approving Catt and Desai's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

## IV.    CONCLUSION

For the foregoing reasons, Catt and Desai respectfully request that the Court issue an Order: (1) appointing them as Co-Lead Plaintiffs for the Class; and (2) approving Pomerantz as Lead Counsel for the Class.

Dated:  January 10, 2025

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Movants Samuel Catt and
Nutan Desai and Proposed Lead Counsel
for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Movants Samuel
Catt and Nutan Desai*

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti

## CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for Samuel Catt and Nutan Desai, certifies that this brief contains 3,570 words, which complies with the word limit of L.R. 11-6.1.

Executed on January 10, 2025.

*/s/ Jennifer Pafiti*
Jennifer Pafiti